UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LINDA SUE MILLER,<br><br>  Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>  Defendant. | Case No. 2:22-cv-00355-EJY<br><br>**ORDER** |

Plaintiff Linda Sue Miller ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance ("DIB") under Title II of the Social Security Act (the "Act"). ECF No. 18. On September 28, 2023, the Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's Motion for Reversal and Remand. ECF Nos. 19, 20. On October 18, 2022, Plaintiff filed her Reply. ECF No. 21. For the reasons stated below, the Commissioner's decision is affirmed.

**I.  BACKGROUND**

Plaintiff filed an application for disability insurance benefits on May 10, 2019, alleging disability beginning on April 24, 2019. Administrative Record ("AR") 23, 183. The Social Security Administration denied Plaintiff's claim initially and upon reconsideration (AR 73-89, 92-109), followed by Plaintiff's request for a hearing before an Administrative Law Judge ("ALJ"). AR 127-28. The ALJ held her hearing in March 2021. AR 23. Plaintiff was represented by counsel at the hearing at which a vocational expert testified. *Id*. On May 18, 2021, the ALJ issued a decision finding Plaintiff not disabled. AR 23-34. Plaintiff requested review of the ALJ's decision (AR 180-81), and the Appeals Council denied her request in January 2022. AR 1-3. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g)

**II.  STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42

U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla." It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, --U.S.--, 139 S.Ct. 1148, 1154 (2019)). In reviewing the Commissioner's alleged errors, the Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986) (internal citations omitted).

"When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198, *citing Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995). However, a reviewing court "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (internal citation omitted). And, a court may not reverse an ALJ's decision based on a harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (internal citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### III.   DISCUSSION

**A.   <u>Establishing Disability Under the Act</u>.**

To establish whether a claimant is disabled under the Social Security Act, there must be substantial evidence that:

> 1. the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> 2. the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999), *citing* 42 U.S.C. § 423(d)(2)(A). "If a claimant meets both requirements, he or she is disabled." *Id*.

The ALJ uses a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-

disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (internal citation omitted); 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. *Tackett*, 180 F.3d at 1098.

The five steps consider:

Step 1. Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" within the meaning of the Social Security Act and is not entitled to disability insurance benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to disability insurance benefits. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to disability insurance benefits. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to disability insurance benefits. *See* 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to disability insurance benefits. *See* 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to disability benefits. *See id*.

**B.    Summary of ALJ findings**.

At step one, the ALJ found Plaintiff meets the insured status required by the Social Security Act through December 31, 2024, has engaged in substantial gainful activity ("SGA") since April 24, 2019 (the alleged disability onset date), has engaged in SGA during the fourth quarter of 2019, and,

considering Plaintiff "worked into 2022," the ALJ's decision focused "on the period in which the … [Plaintiff] was not engaged in … [SGA]." AR 25-26. At steps two and three, the ALJ found Plaintiff had severe impairments of obstructive sleep apnea, spine disorder, and cervical spine disc bulge, and that her impairments did not meet or equal the criteria in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1. AR 26-29.

In preparation for step four, the ALJ determined "[a]fter careful consideration of the entire record, … [that Plaintiff] has the residual functional capacity [("RFC")] to perform light work as defined in 20 CFR 404.1567(b) except never work at unprotected heights, with moving mechanical parts, or in extreme cold; occasional exposure to vibration; and occasional overhead reaching bilaterally." AR 29-30. At step four, the ALJ concluded that Plaintiff is capable of performing past relevant work as an accounting clerk. AR 33. The ALJ stated "[t]his work does not require the performance of work-related activities precluded by" Plaintiff's RFC. *Id*. The ALJ based this determination on the entirety of the record as well as the Vocational Expert who testified that Plaintiff's past relevant work as an accounting clerk and cashier/checker, Dictionary of Occupational Titles ("DOT") job code 216.482-010 and 211.462-014 respectively, defines these jobs as "skilled sedentary" and "semiskilled light." Because the ALJ concluded Plaintiff could perform her past relevant work as an accounting clerk, the ALJ concluded Plaintiff was not under a disability, as defined by the Act, from April 24, 2019 through the date of his decision. *Id.*

**C.    Plaintiff's Claims**.

        1.    The ALJ's RFC Assessment is not Supported by Substantial Evidence.

Plaintiff alleges that the ALJ's RFC assessment is not supported by substantial evidence. ECF No. 18 at 6-10. Plaintiff complains the ALJ adopted assessments almost identical to state agency physicians who the ALJ supposedly criticized because they did not have an opportunity to consider medical evidence presented at Plaintiff's hearing. *Id.*[1] Plaintiff also argues the ALJ (1) found Dr. Buda's opinion "to be stale,"[2] (2) Dr. Garber's opinion regarding Plaintiff's ability to

---

[1]    What the ALJ stated was there was certain evidence these physicians did not consider because it was presented at the hearing level. AR 31. Nonetheless, the ALJ found the opinions of the state agency physicians partially persuasive. *Id.*

[2]    Neither this phrase nor a finding was made by the ALJ in her decision. *See* AR 31 (the page on which the ALJ mentions Concentra documents signed by Dr. Buda).

4

return to work to be based solely on Plaintiff's neck impairment, and (3) rejected Dr. Garber's opinion that Plaintiff was disabled for a temporary period.[3]  *Id*. at 7.  Plaintiff argues there were no other medical opinions upon which the RFC is based and, therefore, the opinion evidence does not rise to the level of substantial evidence.  *Id*.  Plaintiff says she testified to more limitations than those found in the RFC and at no time said she could perform light work.  *Id*. at 8.  Plaintiff says the ALJ should have sought additional information and, having not done so, the result is an RFC with "no support from substantial evidence."  *Id*. at 9.  Plaintiff also argues the ALJ identified Plaintiff's obstructive sleep apnea as severe,[4] and that her orthopedic impairments "persisted in spite of treatment," making it all the more "odd" that the ALJ adopted an RFC with the same limitations as those identified by state agency physicians.  *Id*. at 10.  Plaintiff says the state agency physicians were "speculating" regarding the degree to which Plaintiff's conditions would improve and those speculations were wrong.  *Id*.

       2.    <u>Plaintiff says the ALJ did not Articulate Clear and Convincing Reasons for Discounting her Subjective Complaints</u>.

Plaintiff summarizes her testimony regarding physical and mental health limitations in two paragraphs and then states: "Given … [Plaintiff's] age and vocational profile, her threshold for disability is not particularly high."  *Id*. at 11.  Citing to her testimony, Plaintiff argues her mental limitation would prevent her from doing more than "unskilled work" citing to a Policy Interpretation Ruling for the proposition that she has no transferrable skills.  *Id*. *citing* SSR 00-4p, 2000 WL 1898704, without any explanation of how or why this citation applies in this case.

Plaintiff admits the ALJ found she suffers from impairments "that could reasonably be expected to cause the symptoms alleged," but that Plaintiff's "testimony was not entirely consistent with the medical evidence."  ECF No. 18 at 12.  Plaintiff (erroneously) says the ALJ did not identify specific evidence or explain what testimony was rejected in violation of his obligation to do so.  *Id*. at 13.  Plaintiff argues the ALJ found she was treated "conservatively," but that treatment including "injections have not been characterized as conservative treatment."  *Id*.  Plaintiff argues the ALJ

---

[3]     The ALJ discussed Dr. Garber's opinion that Plaintiff was disabled from October 29, 2018 through November 12, 2018 as a "temporary" finding.  AR 31.
[4]     The ALJ specifically references Plaintiff's sleep apnea in reaching the RFC she did.  AR 31-32.

erroneously found she ceased working for reasons unrelated to her non-severe PTSD, but that Plaintiff "believed" her PTSD was "other than non-severe." *Id*. at 14.

Plaintiff argues she could be found disabled under grid rule 202.06 stating that even if Plaintiff could stand and or walk six hours each workday, "her physical and mental impairments combined … warrants disability based on … all of the criteria having been met" in the grid. *Id*. at 15.[5] Plaintiff also argues that her "decreased standing/walking capacity may warrant a need for a sit/stand option …." *Id*. Plaintiff cites no record evidence to support this contention. Plaintiff says the ALJ was wrong when he found she does not need help with daily living activities. *Id*. Plaintiff again raises the ALJ's reliance on Dr. Garber who rendered an opinion in February 2019, and the ALJ's acknowledgment that Plaintiff suffers from severe obstructive sleep apnea. *Id*. at 15-16. Plaintiff concludes that applying the "credit as true" test requires reversal of the ALJ's decision and remand for further proceedings. *Id*. at 16-17.

**D.      The Commissioner's Response**.

   1.      Substantial Evidence Supports the ALJ's RFC Finding.

The Commissioner states that when crafting the RFC, the ALJ considered "Plaintiff's longitudinal medical records, subjective symptom complaints, and the prior administrative medical findings … from [the] State agency medical consultants." ECF No. 19 at 6 *citing* AR 29-33. The ALJ then "synthesized" the persuasive evidence, findings, and opinions into an RFC concluding Plaintiff can perform light work restricted by "occasional overhead reaching and exposure to vibration and that prohibited her from working at unprotected heights, with moving mechanical parts, or in the extreme cold." *Id*. With respect to the state agency physicians, the Commissioner contends the ALJ found their opinions were "partially persuasive," but because these doctors were "not privy" to additional evidence presented at the administrative level, their opinions were not accepted in full. *Id*. *citing* AR 31. The Commissioner states the ALJ crafted the RFC based on "all the evidence" not just some, as reflected by the more restrictive RFC than otherwise recommended. *Id*. at 6-7. The Commissioner points out that Plaintiff never says what additional limitations should have been included in the RFC, nor does she cite to new evidence or changed circumstances the state

---

[5]      *See infra* at 18 n.15 for discussion of this grid rule.

6

physicians did not get to consider. *Id*. at 7.⁶ The Commissioner argues the ALJ "submitted incremental new evidence" resulting in the more restrictive RFC than proposed by state agency doctors. *Id*.⁷

The Commissioner disagrees with Plaintiff's characterization of Dr. Buda's findings returning Plaintiff to work with restrictions in September 2018, and returning Plaintiff to work with no restrictions in August 2019. *Id. citing* AR 31, 833-34; 841. The ALJ found Dr. Garber's opinion partially persuasive. AR 31. The Commissioner argues Plaintiff contends the shortcomings of various medical opinion translates to a lack of substantial evidence misses the point because the ALJ is required to "synthesize an RCF based on all the relevant evidence in … [Plaintiff's] case record." ECF No. 19 at 7 *citing* 20 C.F.R. § 404.1545(a)(1). The Commissioner says "there is *no legal requirement* that a Plaintiff's RFC be based on a medical opinion." *Id* at 9. Nonetheless, the Commissioner says the ALJ did not interpret raw medical data or substitute her own views for uncontroverted medical opinions, but that she considered the evidence, including all the medical records and opinions in coming to the RFC she did. *Id*. at 9. The Commissioner emphasizes that an ALJ is not required to seek a medical opinion on each occasion new medical evidence is presented. *Id*. *citing Bufkin v. Saul*, 836 Fed.Appx. 578, 579 (9th Cir. 2021). Therefore, the Commissioner takes issue with Plaintiff's ill-defined contention that the ALJ should have sought additional consultations.

To the extent Plaintiff argues the ALJ was not empowered to review raw medical data, the Commissioner argues Plaintiff misunderstands the ALJ's role. "[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RCF." *Id*. at 8 *citing*, *inter alia*, *Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015). As stated in 20 C.F.R. §§404.1513(a)(1), 404.1502(c), and 404.1545, the ALJ is required to consider objective medical evidence when evaluating a claim for disability. *Id*. at 8-9.

---

⁶ The Court notes Plaintiff argues in Reply that she "produced medical evidence combined with statements regarding the parameters of her functional limitations" precluding "her from performing any substantial gainful activity." ECF No. 21 at 4. Plaintiff includes no cites to support this statement.
⁷ Plaintiff contends the Commissioner's Opposition and Cross-Motion do not identify the substantial evidence on which she relied to reach the RFC. *Id*. The Court disagrees as discussed below. The Court also finds the Commissioner did not interpret raw data as Plaintiff reiterates in her Reply brief.

2.      The ALJ properly evaluated Plaintiff's Symptom Testimony.

The Commissioner argues that when the ALJ conducted her analysis of Plaintiff's testimony, she summarized Plaintiff's subjective complaints, found her medically determined impairments could reasonably be expected to produce her symptoms, but that Plaintiff's testimony regarding intensity, persistence, and limiting effects of her symptoms were "not entirely consistent" with the record evidence. *Id*. at 11.  The Commissioner explains "[t]he ALJ may conclude that a claimant's subjective symptoms limit her capacity to work only if those alleged symptoms 'can reasonably be accepted as consistent with the objective medical evidence and other evidence.'" *Id*. at 11 *quoting* 20 C.F.R. § 404.1529(c)(4).

The Commissioner says Plaintiff's testimony regarding intensity, persistence and limiting effects of her symptoms were not entirely consistent with the record "because (1) objective medical findings, medical opinions, and Plaintiff's treatment history did not support the severity of her subjective complaints and the allegation that she cannot work; (2) Plaintiff continued to work until June 2020, which was inconsistent with the alleged severity of her symptoms; and (3) Plaintiff only stopped working because of her non-severe PTSD and Nevada's COVID-19 mask mandate.  These valid reasons to discount Plaintiff's subjective symptom testimony are supported by Ninth Circuit authority, the Social Security regulations, and substantial evidence in the record.  As such, the Court should affirm the ALJ's decision." *Id*. at 11-12.

Agreeing medical evidence cannot be the only basis for rejecting Plaintiff's symptom testimony, the Commissioner notes such evidence "is a useful indicator" when reaching conclusions regarding severity, intensity, and persistence. *Id* at 12 *citing* 20 C.F.R. § 404.1529(c)(2); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).  After summarizing Plaintiff's testimony regarding her limitations, the ALJ found medical records regarding treatment for Plaintiff's neck and back was "routine," and she experienced mild to moderate intermittent symptoms. *Id*. at 12-13 *citing* AR 30, 423, 509-12, 525-26, 539, 541.  The Commissioner points to evidence showing Plaintiff received limited back and neck pain treatment after August 2019 and had "normal findings" when her back and neck were examined. *Id*. at 13-14 *citing* AR 596-97, 881-82, 877, 886-87.  The Commissioner

also argues Plaintiff's "sleep apnea was not nearly as limiting as" she claimed. *Id*. at 14 *citing* AR 606 (Plaintiff's September 2019 sleep study).

The Commissioner walks through all of Plaintiff's allegations regarding the ALJ's errors when she discussed symptom analysis and treatment history arguing: (1) the ALJ summarized Plaintiff's subjective complaints identifying specific medical evidence that undermines Plaintiff's claims; (2) the ALJ noted, when discussing Plaintiff's treatment as conservative, that she rejected recommendations for epidural injections and failed to cite any record evidence to support her contention that she was treated only with over the counter medications; (3) Plaintiff cites no evidence that there was a medical opinion finding her permanently disabled (or unable) to work other than for a two month period in 2018; (4) the ALJ did not completely reject her symptom testimony; and (5) the ALJ restricted Plaintiff to light work with limitations to address her neck, back pain, and fatigue from sleep apnea. *Id*. at 15-16 (and citations therein).[8]

Finally, the Commissioner argues Plaintiff's work history is inconsistent with the severity of her symptoms and reasons for quitting her last job undermine Plaintiff's disability claim. The Commissioner cites to AR 32 to support the fact that Plaintiff worked for nearly two years after her alleged disabling injury in August 2018, and worked for over a year after her alleged disability onset date. *Id*. at 16 *citing* AR 32. While Plaintiff claims her ability to work decreased after her 2018 injury, the Commissioner says Plaintiff cites no evidence to support this conclusion. *Id*. In contrast, the Commissioner says the medical evidence shows Plaintiff's symptoms improved over time. *Id*. at 17 (no citation to the record given).

With respect to Plaintiff's reasons for quitting her last job, the Commissioner discusses Plaintiff's "non-severe post-traumatic stress disorder" in conjunction with Nevada's COVID-19 mask mandates, rejecting Plaintiff's unsupported testimony that her PTSD was something more than non-severe. *Id*.[9]

---

[8] Plaintiff contends because the ALJ reached her decision in May 2021, and even if the 2019 medical evidence "is adequate," the evidence relied upon facts "to undercut [Plaintiff's] testimony regarding her functional limitations thereafter." ECF No. 21 at 6. However, the record reflects the ALJ considered evidence presented into 2021. AR 23, 27, 31.

[9] In response to these arguments, Plaintiff says that her work history predating the date on which she alleged disability is irrelevant to whether she was unable to work once she became disabled. *Id*. at 17. Plaintiff further argues

In conclusion, the Commissioner states the ALJ found Plaintiff "had three severe impairments—obstructive sleep apnea, spine disorder, and cervical spine disc bulge" none of which were the reasons for Plaintiff leaving her last job. *Id*. The Commissioner rejects Plaintiff's efforts to require a "credit-as-true" analysis that would result in remanding this case. *Id*. at 19. The Commissioner states this analysis requires a remand for further proceedings only if "an evaluation of the record as a whole creates serious doubt that a claims is, in fact, disabled." *Id*. *citing Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014).

**E.     Discussion**

    1.     <u>Whether the ALJ's RFC Calculation was Supported by Substantial Record Evidence</u>.

An RFC assessment must "[c]ontain a thorough discussion and analysis of the objective medical and other evidence, including the individual's complaints of pain and other symptoms and the adjudicator's personal observations, if appropriate." SSR 96-8p, 61 Fed. Reg. at 34478. To the extent the evidence could be interpreted differently, it is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). That said, an ALJ, not a doctor, is responsible for determining a plaintiff's RFC. 20 C.F.R. § 404.1546(c); *Rounds v. Comm'r Soc. Sec Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (noting that "the ALJ is responsible for translating and incorporating clinical findings into a succinct RFC").

The ALJ's findings of fact, as embodied in the RFC, are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). When the evidence will support more than one rational interpretation, the Court must defer to the Commissioner's interpretation. *See Burch*, 400 F.3d at 679. Consequently, the issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

However, Plaintiff is correct that "[a]n ALJ must have a medical opinion to support his or her RFC." *Aliza W. v. Saul*, Case No. CV 20-09189-JEM, 2021 WL 3190902, at *4 (C.D. Cal. July 28, 2021). "Without a medical opinion to support the conclusion that Plaintiff was able to perform"

---

she did not "view [] her PTSD as non-severe." She "sought mental health treatment," attending biweekly sessions since October 2019." *Id*. *citing* AR 823.

10

a certain level of work, lift and carry certain weight, or sit, stand or walk for certain periods of time, "the ALJ's RFC lacks the support of substantial evidence." *de Gutierrez v. Saul*, Case No. 1:19-CV-00463-BAM, 2020 WL 5701019, at *6 (E.D. Cal. Sept. 24, 2020) (citing *Perez v. Sec'y of Health & Human Servs.*, 958 F.2d 445, 446 (1st Cir. 1991) ("where an ALJ reaches conclusions about claimant's ... capacity without any assessment of residual functional capacity by a physician, the ALJ's conclusions are not supported by substantial evidence"); *Goolsby v. Berryhill*, Case No. Case No. 1:15-cv-00615-JLT, 2017 WL 1090162, at *8 (E.D. Cal. Mar. 22, 2017) (finding that an ALJ erred in including "simple routine tasks" in RFC when the record did not contain medical opinions supporting this limitation); *Shipp v. Colvin*, Case No. CV 13–9468 JC, 2014 WL 4829035, at *7 (C.D. Cal. Sept. 26, 2014) ("Since ... the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record.")).

Here, the ALJ summarized Plaintiff's medical history in detail referencing the medical records on which she relied. AR 26-32. The ALJ discussed Plaintiff's treatment for hypothyroidism, status post thyroid cancer, diverticulitis, migraine headaches and mental impairments (including anxiety disorder, PTSD, major depressive disorder, adjustment disorder) finding that "in combination" they "do not cause more than minimal limitations" in Plaintiff's "ability to perform basic mental work activities and are therefore nonsevere." AR 27. The ALJ then discussed Plaintiff's psychological evaluation, a work related robbery, her reports of depression symptoms, her PTSD diagnosis and recommended treatment, the treating professional's finding that her inability to work as a result of the robbery and PTSD was temporary, that as of August 2019, Plaintiff attended only three therapy sessions, and that Plaintiff had "intact concentration, … attention, … fluent speech, appropriate mood[,] and appropriate affect." AR 27 and citations to the record therein. In October 2019, Plaintiff's psychological examination revealed she was well groomed, had sustained eye contact, and fair insight. *Id*. This examination also found Plaintiff was pleasant, cooperative, had good attention and concentration, and good immediate memory recall. *Id*. and

citations therein.  The October 2019 evaluation by Dr. Wood stated Plaintiff "can understand and carry out complex tasks and sustain her attention and concentration in completing these tasks (and detailed tasks as well).  *Id*. *citing* AR 566.  The ALJ did not ignore that there was a letter from a therapist dated March 2021 indicating Plaintiff returned for services in October 2019 and "is currently attending biweekly sessions." *Id*. *citing* AR 825.  Dr. Wood opined that Plaintiff "would have mild problems responding to work related pressure." *Id*. at 27-28 *citing* AR 568.  The ALJ found "this opinion persuasive."  AR 28.  The ALJ stated:

> The claimant has had mostly normal mental health findings from her examinations (*See* exhibits 3F, 6F, 7F, & 11F [AR 390-394, 431-434, 435-465, and 560-569]).  Dr. Wood noted that the claimant drove herself to the consultative examination.  The claimant had goal directed and logical thought content.  The claimant had normal orientation.  The claimant had good attention and good concentration.  The clamant was pleasant and cooperative during the consultative examination as well (Exhibit 11F [AR 560-569]).  Therefore, the opinion of Dr. Wood is consistent with his own findings and the objective medical evidence.

AR 28.  The ALJ also notes that Dr. Quaglieri opined that Plaintiff's PTSD "caused a 1% impairment of … [Plaintiff's] whole body[,]" and that Plaintiff was able to "handle complex tasks and manager her conflicts with others."  AR 28 *citing* AR 827-831.  Dr. Quaglieri concluded that Plaintiff's "mental health condition is not severe." *Id*.[10]

The ALJ considered the November 2019 Disability Determination Service ("DDS") opinion regarding Plaintiff's mental health, but found the opinion non-persuasive because the finding of severe mental health impairments was not consistent with the finding that Plaintiff had "mild or no limitations" in "B criteria."  AR 28 *citing* AR 83 (the DDS Explanation prepared by Dr. Ribeiro in November 2019 in which the doctor found Plaintiff had (i) no limitation in her ability to understand, remember or apply information, concentrate, persist or maintain pace, or adapt or manage herself, and (ii) mild limitation in her ability to interact with others).  In fact, in February 2020, Dr. Williams, who conducted a reconsideration of the November 2019 evaluation, confirmed the original findings. *Id*. *citing* AR 103 (the DDS Explanation, Reconsideration performed by Dr. Williams in which he found the same lack of and mild limitations).  The ALJ noted that both of these medical opinions

---

[10]  The ALJ stated "The undersigned finds the disability percentage impairment not persuasive[] as it is not vocationally relevant, although it does suggest that the mental health condition is not severe."  AR 28.

were partially persuasive when they opined regarding Plaintiff's ability to perform a "light range of work" while noting these providers did not have the benefit of information presented at the hearing. AR 31 *citing* AR 85-86, 105-107.[11]

It was only after the summary and synthesizing of the entirety of the record (AR 30-32) that the ALJ reached an RFC finding, giving Plaintiff "the benefit of the doubt … [based on her testimony regarding] her neck pain, back pain and fatigue from … sleep apnea," that Plaintiff had the ability to perform a light range of work with limited reaching and limitations to exposure to the environment. AR 32. The ALJ stated:

> No single factor mentioned is conclusive on the issue to be determined, but when viewed in combination, and in conjunction with the medical history and examination findings, they suggest that the … [Plaintiff] is not as limited as is alleged. For all the foregoing reasons, the undersigned concludes that since the date of the alleged onset of disability the … [Plaintiff] has been able to perform a range of light work consistent with the residual functional capacity as assessed.

AR 32-33.

An ALJ is not required to perform a "function-by-function analysis ... so long as the RFC is otherwise supported by substantial evidence." *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 313 (W.D.N.Y. 2013). And, Plaintiff misunderstands her burden of proof. Plaintiff's burden extends beyond merely questioning the sufficiency of the ALJ's explanation for reaching the RFC she did. *Ukolov*, 420 F.3d at 1004 ("The claimant carries the initial burden of proving a disability.") (citation omitted). As stated in *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993), "[t]he mere existence of an impairment is insufficient proof of a disability" because the "claimant bears the burden of proving that an impairment is disabling." (Internal citations omitted.) It is Plaintiff's burden to show that she is not just precluded from performing her prior work, but from performing any substantially gainful work due to an impairment. *Id.* (internal citation omitted). The ALJ forms an RFC "based on all the relevant evidence in" the case presented. 220 C.F.R. § 404.1545(a)(1). The ALJ will take into account "all of the relevant medical and other evidence." *Id*. at § 404.1545(a)(3).

---

[11]   The ALJ considered Plaintiff's testimony regarding her limitation and ability to work (AR 28), the adult functions reports Plaintiff completed (AR 28-29), and the four broad functional areas application to evaluating mental health disorders (criteria B), finding the "no more that 'mild' limitation in any of" these areas. AR 29.

Plaintiff is "responsible for providing the evidence" the ALJ "will use to make a finding about … [Plaintiff's] residual functional capacity." *Id*.

Here, the ALJ properly considered all of the various types of evidence in the medical record, including objective evidence, treatment history, and clinical findings. The ALJ properly translated and incorporated this evidence into an RFC. 20 C.F.R. §§ 416.913(a), 416.945(a)(3); *Rounds*, 807 F.3d at 1006. And, contrary to Plaintiff's argument, a review of the ALJ's decision show she never interpreted raw medical data or substituted her own views for uncontroverted medical opinions. Instead, the ALJ considered Plaintiff's reports of limitations together with all the medical information available to come to an RFC that she is responsible for making. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (determining RFC "is the responsibility of the ALJ") (internal citation omitted). The "ALJ was not required to seek input from a medical expert because the ALJ was able to make a determination supported by substantial evidence." *Foster v. Astrue*, Case No. CV–09–307–JPH, 2011 WL 1807426, at *8 (E.D. Wash. May 11, 2011). As explained in *Foster*, "[t]here are two instances where the opinion medical expert is required: (1) when equivalence to a listing is at issue at step three; and (2) when the record is ambiguous regarding the onset date. *Id See* S.S.R. 83-20; S.S.R. 96-6p; *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998)." Neither of the circumstances is present here. *Id*. The ALJ did not find the record inadequate, insufficient, or ambiguous (AR 23-33).

In sum, the Court finds Plaintiff's arguments insufficient to support remand of this case for further proceedings. Plaintiff avers there were no medical opinions on which the ALJ relied, but this misstates the record. AR 28 (finding Dr. Wood's opinion persuasive), AR 28 (finding Dr. Quaglieri's opinion non-persuasive, but only as "the disability percentage impairment," but helpful when determining Plaintiff's mental health as non-severe), AR 31 (finding Dr. Garber's opinion partially persuasive based on his determination that Plaintiff was "stable from a neurosurgical standpoint," but otherwise listing only one functional limitation; that is a "15 pounds lifting, pushing, and pulling" limitation), AR 31 (finding DDS opinions partially persuasive as to Plaintiff's overhead lifting limitation and exposure to cold, noise, vibration, and hazard).

If the record reasonably "support[s] either affirming or reversing, the reviewing court may not substitute its judgment for that of the Commissioner." *Lizer v. Berryhill*, 363 F. Supp. 3d 1097, 1099 (N.D. Cal. 2019). As discussed fully above, the Court finds the ALJ's RFC was supported by substantial evidence. As such, the Court upholds the Commissioner's decision and denies Plaintiff's Motion for Reversal and Remand.

      2.      <u>The ALJ's Determination Regarding Plaintiff's Testimony</u>.

An ALJ engages in a two-step analysis to determine whether a plaintiff's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The … [Plaintiff] is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citations and internal quote marks omitted). Second, "[i]f the [plaintiff] meets the first test and there is no evidence of malingering, the ALJ can only reject the [plaintiff's] testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citation and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the plaintiff's] testimony.")). Further, "[w]hile an ALJ may find testimony not credible in part or in whole, he may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The Ninth Circuit recognizes the clear and convincing evidence standard as "the most demanding required in Social Security cases" and "not an easy requirement to meet." *Garrison*, 759 F.3d at 1015 (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002));

*Trevizo v. Berryhill*, 871 F.3d 664 678 (9th Cir. 2017). An ALJ's failure to provide "specific, clear, and convincing reasons" for rejecting a plaintiff's pain and symptom testimony constitutes legal error that is not harmless because it precludes a court from conducting a meaningful review of the ALJ's reasoning and ensuring that the plaintiff's testimony is not rejected arbitrarily. *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015).

The ALJ provided a thorough summary of Plaintiff's testimony. AR 28. After summarizing the medical record (and a thorough discussion of the same), the ALJ stated that while Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reason explained in" her decision. AR 30. The ALJ then identified the specific medical opinions on which she relied to reach this determination. AR 30-31 (and citations therein). More specifically, the ALJ stated:

> In February 2019, the [… Plaintiff] was seen for her neck pain. On examination, the [… Plaintiff] had full muscle strength in her upper and lower extremities. Jason Garber, M.D., who examined … [Plaintiff], recommended nerve root blocks. He also released the [… Plaintiff] to return to "full duty" at work (Exhibit 9F/2-3). In July 2019, the [… Plaintiff] followed up for her neck pain. It was noted that the [… Plaintiff's] neck pain started after a work injury in August 2018.[] It was also noted that the [… Plaintiff's] cervical spine MRI revealed a bulging disc at the C5-6 disc level. On examination, the [… Plaintiff] had full range of motion in her neck (Exhibit 5F/1). The [… Plaintiff] did have pain with cervical movement. The [… Plaintiff] was diagnosed with cervical disc displacement. The [… Plaintiff] declined injections to treat her neck pain (Exhibit 5F/2).[12] Of note, the [… Plaintiff] also underwent a lumbar spine MRI. Imaging revealed arthropathy with degenerative changes from the L4 disc through the S1 disc. The [… Plaintiff] also had narrowing (Exhibit 8F/56). In August 2019, the [… Plaintiff] was in treatment with Patricia Prince, M.D., for her neck pain. The [… Plaintiff] endorsed muscle spasms, and weakness in her right hand. It was noted that the [… Plaintiff] had no issues with her gait and with "fine manipulative tasks." On examination, the [… Plaintiff] had mostly normal findings (Exhibit 8F/45-47). Dr. Prince noted that … [Plaintiff] has obstructive sleep apnea and listed it as an active problem (Exhibit 12F/7).[] On August 16, 2019, Dr. Garber indicated that … [Plaintiff's] condition was stable and she had reached maximum medical improvement (in terms of her neck condition). Dr. Garber again released … [Plaintiff] to fulltime duty (Exhibit

---

12      The record at 5F/2 (AR 424), which is the second page of progress notes from a July 26, 2019 doctor's visit to the Southern Nevada Pain Center, states "we spoke about cervical injections as recommended by neurosurgery. The patient is not interested in injection therapy at this time given the fact that she has a high sensitivity to steroids." Nonetheless, the ALJ considered Plaintiff's "cervical spine MRI revealed a bulging disc at the C5-6 disc level"; "[o]n examination, … [Plaintiff] had full range of motion in her neck (Exhibit 5F/1 [AR423])"; Plaintiff "did have pain with cervical movement[, and Plaintiff] was diagnosed with cervical disc displacement." AR 30.

> 9F/15). In February 2020, the [… Plaintiff] was in treatment for her obstructive sleep apnea. It was noted that the [… Plaintiff] was placed on a CPAP for her symptoms. The [… Plaintiff] said that she goes to bed early and is still tired during the day. The [… Plaintiff] said that she has chest pain when she wakes up (Exhibit 31F/17). The [… Plaintiff] was found to be intolerant of her CPAP. She was told to stop using it (Exhibit 31F/20). During an examination in December 2020, the [… Plaintiff] had normal range of motion with no tenderness. The [… Plaintiff] had normal findings in her extremities as well (Exhibit 20F/3). During an examination in January 2021, the [… Plaintiff] had full range of motion in her upper extremities and in her lower extremities. The [… Plaintiff] had normal neurologic findings as well (Exhibit 23F/3).

AR 30-31. *See also* AR 31-32 discussing DDS opinions found partially persuasive, Dr. Garber's August 2019 opinion found partially persuasive, rejecting a finding of temporary disability in 2018, and rejecting the opinion of Plaintiff's chiropractor's opinion regarding percentage of whole body disability, and concluding that "the objective medical evidence does not support the severity of … [Plaintiff's] allegation that she is incapable of working." As the above demonstrates, the evidence on which the ALJ relied was objective medical evidence and constitutes specific, clear and convincing reasons to reject the intensity, persistence and limiting effect of Plaintiff's symptoms.

Moreover, the ALJ did not wholly discount Plaintiff's testimony regarding intensity, persistence or limiting effects of her symptoms. *Id.* He modified the RFC taking into account Plaintiff's reports of "neck pain, back pain, and fatigue from her sleep apnea" and limited Plaintiff "to light work with limited reaching, and limited exposure to environments, which might exacerbate all of her impairments." AR 32. The record demonstrates the ALJ provided specific, clear and convincing reasons for rejecting the intensity, persistence, and limiting effects of Plaintiff's symptoms. The ALJ's finding of conservative treatment, while potentially susceptible to a different interpretation, does not allow for remand as the Court must "defer to the ALJ's conclusion." *Batson*, 359 F.3d at 1198 (internal citation omitted).[13] Plaintiff failed to establish otherwise and, therefore, failed to demonstrate a reversible error.[14]

---

[13]   The Court notes the ALJ correctly found Plaintiff "did not require surgery to treat her pain. The … [Plaintiff] also returned to work for almost two years after she was injured in August 2018. The … [Plaintiff] testified she stopped working due to her nonsevere PTSD and the mask mandate in Nevada, [and that Plaintiff] engaged in substantial gainful activity for three months in 2019 after the August 2018 work incident. In terms of her sleep apnea, the claimant stopped using her CPAP." AR 32. Thus, irrespective of the lack of surgery (including injections, which may not support a finding of conservative treatment), and in light of Plaintiff's sleep apnea, the ALJ found an independent basis to conclude Plaintiff could "perform a range of light work consistent with the residual functional capacity as assessed." AR 33.

[14]   As explained in *Shinseki*, 556 U.S. at 409-10, the burden of demonstrating harmful error falls on the party attacking the agency's determination. The Court may not reverse an ALJ's decision based on "an error that is harmless."

3. The Credit-As-True Test.

In a single paragraph, Plaintiff contends the Court should apply the credit-as-true test to the ALJ's determination because the ALJ failed "to provide legally sufficient reasons for rejecting" Plaintiff's testimony. ECF No. 18 at 16. Plaintiff says because there are no outstanding issues to be resolved to make a disability determination, and based on the "grid rule 202.06 and the testimony of the VE" Plaintiff is disabled, the Court should credit Plaintiff's testimony as true, revere the ALJ's determination and remand for further proceedings.[15] *Id*. at 17.

When evaluating whether this case presents the "rare" and "extreme" circumstances justifying a remand for payment, the Court normally applies a three step test. *Treichler v. Comm'r of Sec. Sec.*, 775 F.3d 1090, 1100-01 (9th Cir. 2014). The Court must determine whether: (1) the ALJ "failed to provide legally sufficient reasons for rejecting evidence" in the administrative record, for example a claimant's testimony or a medical opinion; (2) the record as a whole is free from conflicts, ambiguities, or gaps and has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful; and (3) it is clear from the record that the ALJ would have to conclude that the claimant is disabled if the improperly rejected evidence were credited as true." *Id*. at 1100-01, 1103-04 (internal quote marks omitted). However, even if all three elements of the test are met, the Court will remand for further proceedings only if "an evaluation of the record

---

*Molina*, 674 F.3d at 1111. An ALJ's error is harmless "where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* at 1115. In such scenarios, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's ultimate conclusion." *Id.* (internal citation and quote marks omitted). Here, Plaintiff says the ALJ committed reversible error when evaluating Plaintiff's testimony. ECF No. 18 at 16. However, the analysis above demonstrates Plaintiff does not meet her burden of demonstrating an error, if any, was such that the ALJ's basis for discounting Plaintiff's reports regarding the severity of her symptoms were without valid reasons. Thus, Plaintiff's argument regarding harmful error fail.

15     Plaintiff cites SSR 00-4p, 2000 WL 1898704 (S.S.A. 2000), a policy statement that includes the following: "For example, an individual does not gain skills that could potentially transfer to other work by performing unskilled work. Likewise, an individual cannot transfer skills to unskilled work or to work involving a greater level of skill than the work from which the individual acquired those skills." *Id*. at *3. While this grid rule allows for a finding of disability if the claimant is over the age of fifty-five, is limited to light or sedentary work, has a high school degree or above, and the claimant's previous work was skilled or semi-skilled and the skills of that work are not transferable to other jobs, the rule does not apply here because the ALJ did not opine or conclude Plaintiff has or does not have any transferrable skills. AR 23-34.. Further, once the ALJ found Plaintiff's RFC allowed her to perform past relevant work, the disability inquiry was complete. The grids "are only used at step five," which is inapplicable to the case at bar. *Mohamadmajid S. v. Saul*, Case No. 5:18-cv-00005, 2019 WL 9075957, at *8 (W.D. Va. July 10, 2019). Therefore, the ALJ did not err in failing to consider whether Plaintiff met the qualifications for grid rule 202.06.

as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021. *See also Treichler*, 775 F.3d at 1101 (a court may only apply the credit-as-true rule if "the record, taken as a whole, leaves not the slightest uncertainty as to the outcome of the proceeding") (internal quotation marks omitted).

Here, the ALJ found Plaintiff had no limitations in understanding, remembering or applying information and adapting or managing herself, and that she only had mild limitations when interacting with others and concentrating, persisting or maintaining pace. AR 26-29. Plaintiff does not challenge these findings. *See* ECF No. 18, *generally* (in which these issues are neither mentioned nor impliedly discussed). Plaintiff also never mentions any ambiguity or gap that must be developed; albeit she does says, without explaining more, that the ALJ could have sought additional medical information from experts. *Id*. at 9. However, the Court found the ALJ's opinions were supported by substantial evidence and the ALJ was not required, and, in this circumstance, to seek additional medical opinions.

Accordingly, the Court rejects Plaintiff's argument that the credit-as-true test requires remand for an award of benefits.

**IV.    ORDER**

IT IS HEREBY ORDERED that Plaintiff's Motion for Reversal and Remand (ECF No. 18) is DENIED.

IT IS FURTHER ORDERED that Defendant's Cross-Motion to Affirm (ECF No. 19) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court must enter judgment in favor of Defendant and close this case.

DATED this 3rd day of February, 2023.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE